IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CYNTHIA GRIFFITH,
CARISSA GRIFFITH, and
NICHOLAS RIPLEY,

    Plaintiffs,

v.                                                 No. 15-1302

JUAN MANUEL ALEMAN and
CCS TRUCKING, INC.,

    Defendants.

_____

ORDER DENYING MOTION TO REMAND
_____

*I. INTRODUCTION AND FACTS ALLEGED*

Plaintiff, Nicholas Ripley,[1] initiated this action against the Defendants, CCS Trucking ("CCS")[2] and its truck driver, Juan Manuel Aleman, on November 4, 2015, in the Madison County, Tennessee, Circuit Court. (D.E. 1.) The case arises from an automobile accident in Jackson, Tennessee, between Cynthia Griffith's vehicle and an eighteen-wheel tractor-trailer driven by Aleman and owned by CCS Trucking. (D.E. 1-1 at 1-2.) The complaint alleged that Aleman acted negligently in his operation of the tractor-trailer. CCS's liability is predicated on the allegation that Aleman was performing its business and was "acting within the scope and course of his employment," with CCS's "knowledge, permission, and consent." (D.E. 1-1 at 5.) The complaint stated that, as a result of one or more of negligent acts, Ripley suffered:

---

[1] The Motion to Remand states that Plaintiffs, Cynthia Griffith and Carissa Griffith, have settled with both Defendants. (Docket Entry "D.E." 8.) Plaintiffs affirm their intent to file for dismissal of the Griffiths' claims in the appropriate court upon the issuance of this order. Accordingly, the Court will refer to Ripley as the sole remaining plaintiff.

[2] Of the two named defendants, thus far, only Aleman has been served.

a) severe and permanent injuries, caused, precipitated and/or aggravated by the wrong complained of, including but not limited to injuries to his head, neck, back, and right knee;
b) physical pain, both past and future;
c) significant medical expenses, both past and future;
d) mental and emotional anguish, both past and future;
e) fright and shock; and
f) impairment of the ability to enjoy normal pleasure of life.

(D.E. 1-1 at 6.) As a result of these losses, Plaintiff seeks "compensatory damages of an amount to be determined by the jury that will fairly and justly compensate him . . . ." (*Id.*)

On December 11, 2015, Aleman removed the lawsuit to this Court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. (D.E. 1.) According to the original complaint and Defendant's removal notice, Ripley is a citizen and resident of Tennessee, Aleman is a citizen and resident of Texas, and CCS is a Texas corporation with its principle place of business there. (D.E. 1 at 2.) Thus, complete diversity exists between the parties.

Plaintiff moved to remand the case to state court on February 29, 2016, based on his intended filing of an amended complaint in state court, in which he limits the damages sought to no more than $74,000. Additionally, Plaintiff, through his attorney, stipulates that the value of his damages do not exceed $74,000. (D.E. 8 at 3.)

### III. JURISDICTION

Removal of cases from state to federal court is governed by 28 U.S.C. § 1441(a), which provides that

> any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

A federal district court has original jurisdiction over any civil action "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, or "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States," 28 U.S.C. § 1332(a)(1). A defendant requesting removal pursuant to § 1441(a) on diversity grounds "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" in the removal notice. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). However, "[e]vidence establishing the amount is required by [28 U.S.C.] § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* The United States Supreme Court held in *Owens* that

> [i]f the plaintiff contests the defendant's allegation, § 1446(c)(2)(B) instructs: "[R]emoval ... is proper on the basis of an amount in controversy asserted" by the defendant "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. This provision, added to § 1446 as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (JVCA), clarifies the procedure in order when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.

*Id.* at 553-54. Since the amount in controversy has been contested by Plaintiff, the Court must determine whether the threshold has been met.

A court should determine the amount in controversy of a case from the perspective of the plaintiff, *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007), at the time of removal, *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000). Where the plaintiff's complaint includes a specific monetary demand, that sum typically sets the amount in controversy. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (quoting *Gafford v. Gen. Elec. Co.,* 997 F.2d 150, 156 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v.*

*Friend*, 559 U.S. 77 (2010)). Thus, a claim for less than the jurisdictional threshold should generally preclude removal. *See Gafford*, 997 F.2d at 157. However,

> [s]tate counterparts to Fed.R.Civ.P. 54(c) might enable a plaintiff to claim in [his] complaint an amount lower than the federal amount in controversy but nevertheless seek and recover damages exceeding the amount prayed for. Tennessee has one such rule. Its Civil Procedure Rule 54.03 provides that, except in the case of default, "every final judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." In such situations, the removing defendant must show that it is "more likely than not" that the plaintiff's claims meet the amount in controversy requirement.

*Rogers*, 230 F.3d at 871 (quoting *Gafford*, 997 F.2d at 158).

Jurisdictional questions can also arise in cases such as this one, where the plaintiff does not originally state a specific amount of damages in the complaint. *See Everett*, 460 F.3d at 822. "Failure to adequately plead the amount in controversy requirement may be cured by the presence of clear allegations . . . that the case involved a sum well in excess of the $75,000 minimum." *Hayes*, 266 F.3d at 573 (quoting *Cook v. Winfrey*, 141 F.3d 322, 326 (7th Cir. 1998)). In such a case, "where plaintiffs seek to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement, the defendant satisfies its burden when it proves that the amount in controversy 'more likely than not' exceeds $75,000." *Everett*, 460 F.3d at 822.

*IV. ANALYSIS*

To meet his burden under § 1446 to show that the amount in controversy threshold has been met and that removal was proper, Defendant relies on the following allegations: 1) the claims and relief sought in Ripley's complaint are sufficient to meet the jurisdictional threshold; 2) Plaintiff's own valuation of the case, as expressed in the demand letter to CCS's insurance carrier, was for $150,000 (D.E. 9-1); and 3) the post-removal stipulation and amendment are

4

insufficient to divest this Court of jurisdiction. (D.E. 9.) Ripley argues that the stipulation limiting compensatory damages to $74,000 serves to deprive this Court of diversity jurisdiction and is evidence of his valuation of the case. (D.E. 8 & 9-1.) He further maintains that, because Plaintiff's letter was addressed to CCS's insurance carrier and not to Aleman, the letter is not conclusive in determining the amount in controversy in the claim against the individual Defendant. (D.E. 10-1.)

Plaintiff has included specific economic damage—thus far, totaling $23,500 in medical bills—as well as unspecified damages for past and future expenses, injuries, and mental and emotional damage. (D.E. 1-1 at 7.) His original complaint requested "compensatory damages of an amount to be determined by the jury . . . . " (*Id.* at 7.) Given the serious nature of the injuries and the alleged damages, it appears to the Court that the amount in controversy more likely than not exceeded $75,000 at the time of removal. *See Everett*, 460 F.3d at 822; *Gantzer v. Langley*, No. 2:09-CV-295, 2009 WL 1604799, at *3 (S.D. Ohio June 2, 2009) *report and recommendation adopted*, No. CIV.A.2:09-CV-00295, 2009 WL 1921069 (S.D. Ohio July 1, 2009) (holding by a preponderance of the evidence that where plaintiff incurred $27,500 in medical bills from a tractor-trailer accident, the total of the past and future damages alleged exceeded $75,000); *Partlow v. Jones Motor Co., Inc.*, 736 F. Supp. 744, 745 (E.D. Mich. 1990) (making an independent evaluation of the amount in controversy based on the injuries alleged in an automobile accident case).

Aside from the Court's independent determination of the likely amount in controversy, it would appear that Ripley's own valuation of his case exceeds the jurisdictional threshold. *See Smith*, 505 F.3d at 407 (holding that the amount in controversy is determined from the

perspective of the plaintiff). Two days before Defendant filed for removal, Plaintiff's counsel submitted a letter to CCS's insurance carrier demanding $150,000. *Rogers*, 230 F.3d at 872 (holding that the amount in controversy is determined at the time of removal). Although the demand letter is not competent evidence "to prove or disprove the validity or amount of a disputed claim," Fed. R. Evid. 408(a), a court may consider it for "another purpose," Fed. R. Evid. 408(b), such as inquiring into the whether the jurisdictional threshold of the amount in controversy has been met, *see Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002).

Ripley insists that because the demand letter was made to the insurance carrier for CCS and not Aleman, it cannot be used to establish the amount in controversy in this case. Plaintiff, attempting to draw parallels to *Billingsley v. McGriff Transp., Inc.*, No. 05-4397-CV-C-NKL, 2006 WL 51188 (W.D. Mo. Jan. 10, 2006) (finding that demand letter sent to unrelated third party did not establish amount in controversy), casts CCS in the role of a third party—unrelated to Aleman. However, Defendant avers that the letter is relevant because 1) it discussed the liability of both CCS and Aleman, and 2) as Aleman's employer, CCS's responsibility is predicated solely on the theory of vicarious liability for Aleman's torts. (D.E. 12-1 at 3.) There are no independent claims against CCS. In the letter, Ripley's attorneys state that they "have factored in the clear liability on the part of Juan Aleman and CCS Trucking, Inc." in order to reach the "reasonable settlement value of $150,000." (D.E. 9-1 at 2.) This correspondence and the complaint, taken together, make it clear that the claims against CCS and Aleman were one and the same. It is only after removal that Plaintiff has attempted, although unsuccessfully, to

6

distinguish between the two parties.  Accordingly, the letter is competent evidence to establish the amount in controversy against Aleman.

Ripley next argues that even if this Court properly had subject matter jurisdiction at the time of removal, the post-removal stipulation serves to divest the Court of jurisdiction.  This is not the case.  Plaintiff cites *Tankersley v. Martinrea Heavy Stampings, Inc.*, 33 F. Supp. 3d 775 (E.D. Ky. 2014), for the proposition that "[w]hen a post-removal stipulation is the first specific statement of the alleged damages then it is considered a clarification, rather than a reduction, and the case may be remanded."  Contrary to the facts in *Tankersley*, the demand letter, not the damages stipulation, served as Ripley's first expression of the amount of damages sought.  Thus, the case is not persuasive.  Furthermore, to remand the case on the basis of the post-removal stipulation would run counter to the policy expressed by the Sixth Circuit in discouraging forum shopping:

> Because jurisdiction is determined as of the time of removal, events occurring after removal that reduce the amount in controversy do not oust jurisdiction. Therefore, consistent with [United States Supreme Court and Sixth Circuit precedent], we hold that a post-removal stipulation reducing the amount in controversy to below the jurisdictional limit does not require remand to state court. This rule is grounded not only in precedent, but also in sound policy. If plaintiffs were able to defeat jurisdiction by way of a post-removal stipulation, they could unfairly manipulate proceedings merely because their federal case begins to look unfavorable. Moreover, the interests of simplicity and uniformity dictate that post-removal stipulations be treated just like any other post-removal event.

*Rogers*, 230 F.3d at 872 (referencing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)).

*IV. CONCLUSION*

For the reasons stated herein, the Court finds that removal was proper at the time it occurred, and that Plaintiff's attempts to remand are without merit. Thus, Plaintiff's motion to remand is DENIED.

IT IS SO ORDERED this 17th day of May 2016.

                                          s/ J. DANIEL BREEN
                                          CHIEF UNITED STATES DISTRICT JUDGE